Opinion delivered March 19, 1884.

---

[No. 1662.]

## W WHEELER *v.* THE STATE.

1. TRANSCRIPT.—In preparing transcripts for appeal, clerks of the trial courts should be careful to insert no foreign or superfluous matter.
2. THEFT—RETURN OF STOLEN PROPERTY.—Appellant was convicted of the theft of a ten dollar bill from the person of one F. It was in proof that the appellant immediately returned the pocket book from which he had abstracted the ten dollar bill described in the indictment; but there was no proof of a return of the ten dollar bill. *Held,* that there was no occasion for the trial court to give in charge to the jury the law applicable to the voluntary return of stolen property.

3. CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT.—Defendant was seen to take the pocket book from which the ten dollar bill was abstracted, but was not seen to take the money out of it. *Held*, that this was positive not circumstantial evidence, and therefore did not necessitate an instruction on the character of circumstantial evidence.

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—See the opinion for newly discovered evidence *held* not cause for a new trial, because too indefinite in its nature, and because ordinary diligence would have secured it at the trial.

APPEAL from the District Court of Smith. Tried below before the Hon. F. J. McCord.

This appeal is from a conviction of theft of a ten dollar bill, the property of A. J. Florence, from the person of the owner, on October 17, 1883. A term of five years in the penitentiary was the penalty assessed against the appellant.

A. J. Florence, the owner of the stolen money, testifying for the State, said that the first time he ever met defendant was on the morning of October 17, 1883. Witness had that day brought some cotton to the town of Tyler, and, having sold it, was in the store of Harris & Lipshits, for the purpose of trading. A few minutes after witness entered the store, the defendant came to where witness was standing. Witness paid little or no attention to the defendant at the moment. Witness had three hundred dollars in his purse, which he had just taken from the cash counter, where he had counted and straightened out his money. He sat down and placed his pocket book on his knee, and it fell off. Defendant, who was standing near by, picked up the pocket book and handed it to witness, who then told him that he was able to take care of his money, and did not need help. At this time, the witness was looking at his purse and money, and observed the defendant as he quickly picked up the purse, but did not see him then get any of the money. In trying to adjust his purse, witness could not fix it securely, and Mr. Lipshits said he would go and get a string for witness to tie it up with. Witness was in the back end of the store house, and Mr. Lipshits started behind the counter, toward the front end of the house, for the purpose of getting a piece of twine. Then the defendant suddenly jerked the purse and money out of witness's hand, and started off toward the front of the house. Witness yelled at him to stop with witness's money. Defendant replied that he would tie it for witness, and kept on, with his back

toward witness, but was met by Mr. Lipshits, in the aisle of the store, and about eighteen feet from witness. Lipshits told the defendant to give back witness's purse, and the defendant did so. Defendant took the purse without the consent, and against the will, of witness. He grabbed it from witness's hand, and was walking rapidly toward the door when, as he met Lipshits, the witness was yelling at him, and he stopped. Mr. Lipshits gave witness a string to tie up his purse with, and, as witness put his purse and money on the cash counter, several silver half dollar pieces dropped, and the defendant grabbed up a half dollar and started out at the back door, a few feet off, and witness stopped him and told him to give up the money. The defendant returned the money to the witness, with the words: "You are mighty d—d particular about your money. I just thought I'd take a drink." Defendant then left, and witness saw no more of him for several hours, when he was under arrest. Witness's suspicions were aroused after the defendant left, which induced him to recount his money. He found ten dollars missing. The witness could not now remember the aggregate amount of money he had, but knew at the time. When the witness missed the ten dollars, he notified deputy sheriff Finch, and gave him a description of the money. In an hour or two, the defendant was arrested. The money lost was a United States ten dollar bill, of the value of ten dollars, such as is commonly known as "greenbacks." Witness could give no better description of it. Witness had several other bills of the same character and denomination in the purse when the defendant grabbed it. Witness recovered all but ten dollars. He did not give his consent to the taking. This all occurred in Smith county, Texas.

Cross-examined, the witness stated that these occurrences transpired on "show" day, but that he was not drunk, though he had taken two or three drinks. Witness did not then know the defendant, and had never taken a drink with him—had never seen him before. From the familiarity assumed by the defendant, witness thought at the time that he was a hand working for some of his, witness's, relatives. Witness sought out an officer and described the defendant to him as soon as he missed the money. The defendant is the man who jerked the money and purse from the witness at the time and place referred to. If he had got the money when it dropped the witness would have seen him, as the money dropped right at witness's feet.

39

The defendant's back was toward the witness for several steps after he jerked the purse from witness and started out.

J. J. Robinson, for the State, testified that he saw the defendant on the morning of October 17, 1883. He came to the witness to hire, representing himself as an hostler. He told the witness that he came to Tyler the night before with Dorris's circus; that he was tired of circus life and wanted to get out of it. He was, or seemed to be, sober at the time, but looked rough and badly. Witness told him that if he was not a drinking man he would hire him. Defendant replied that he did not drink. He then told the witness that he had no money, and asked the loan of fifty cents with which to purchase something to eat. Witness gave him fifty cents. This was about eight or nine o'clock in the morning. Within half an hour witness saw him in Martino's saloon, treating another man. He handed out a half dollar and got a quarter in change. In a few minutes witness saw him spend the remaining quarter, taking a drink and treating again. Witness was then watching him, as he expected to hire him. About twelve o'clock the defendant came to witness's stable with a whip, brush and some clothes, and witness told him that he did not want him. He then wanted to sell witness the whip and brush. Witness bought the brush but declined to buy the whip. He then asked the witness if he could stay with the boys at the stable at night, until the next week when Cole's circus should arrive; and said that he had money enough to get his grub. Witness replied that, if the boys did not object, he did not.

Cross-examined, the witness stated that he did not know whether or not the defendant had money when he borrowed the fifty cents. He told the witness that he had none. Defendant was arrested shortly after he came to the stable with the clothes, brush and whip. Witness had never before heard of or seen him.

M. Scott testified, for the State, that he was merchandising in Tyler, on the south side of the square, directly opposite the store of Harris & Lipshits. On the day of defendant's arrest the witness sold him two woolen undershirts and two pair of woolen drawers for six dollars. He gave the witness, in payment, a ten dollar United States greenback bill, and the witness gave him four silver dollars in change. He came to the witness's store from the west side, and went eastward toward Robinson's stable. But little passed between witness and defendant, but wit-

ness knew the defendant as the party to that transaction. This occurred about twelve o'clock m. Shortly afterward deputy sheriff Finch brought the goods back to the store, and witness told him of the trade, money, etc. The witness could not say how much money the defendant had, nor how he got it. Witness only saw the ten dollar bill.

The opinion of this court shows the substance of the newly discovered evidence relied on for a new trial, and the motion for new trial presents the questions discussed in the opinion.

*Geo. M. & S. S. Johnson* filed an able and exhaustive brief for the appellant,

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE.    Appellant was convicted for theft from the person of A. J. Florence, of a ten dollar bill, and his punishment was assessed at confinement in the penitentiary for five years.

We find in the transcript the following matter: "And the grand jurors aforesaid at the same time asked that the court appoint a finance committee to examine into and report the condition of the finances of Smith county, and, having no further business now before the court, retire to consider of their further duties." What has the financial condition of Smith county to do with this case? Or in passing upon this appeal, what bearing upon, or relation to, this case has the request of the grand jury for a finance committee? It is the practice of this court, in criminal cases, to read the entire record; and records prepared under the rules are necessarily voluminous, requiring of us a vast amount of time and labor to read them. We would therefore beg of clerks not to insert in the transcript matter foreign to the case, or matter which is immaterial or unnecessary to a proper disposition of the case.

Counsel for appellant insist that the judgment should be reversed, first, because the law applicable to the case of voluntary return of stolen property was not given in charge to the jury. Appellant snatched the pocket book of Florence, which contained about three hundred dollars, and started for the door. Florence called to him to stop with his money. Defendant said he would tie it for him, continuing toward the door, where defendant was met by Lipshits, who told him to give Florence his money. Defendant gave back the pocket book.

If the evidence closed here—if this was *the case*—the question of voluntary return of the property might possibly be presented. We are inclined to the opinion that, under these facts, this question would not arise, but, be this as it may, the other facts clearly show that there was no return, voluntary or otherwise, of the ten dollar bill; for when, with his back to Florence, he, the defendant, dextrously extracted the bill, this ten dollar bill was never returned by defendant. And for the theft of this bill, not the pocket book and its contents, defendant was convicted.

2. Counsel for appellant contend that this is a case of circumstantial evidence, and that, therefore, the law applicable to such a case should have been charged to the jury. While it is true that defendant was not seen to take from the pocket book the ten dollar bill, he nevertheless was seen to take the pocket book which contained the bill. Was this not positive evidence of the *taking* of the bill? We think so.

3. It is urged by counsel for appellant that a new trial should have been given defendant upon the ground of newly discovered evidence.

In support of the testimony of the prosecuting witness Florence, the State proved that, prior to the supposed theft, defendant was almost entirely destitute of money, but that after the theft, on the same day, he was seen with a ten dollar bill, etc. Under the facts of this case, this evidence was very pertinent and criminative. To meet this, the defendant claims that he has discovered the proper matter in the affidavit of F. W. Flood. What says Flood upon this subject? That defendant was in his saloon the day or night before the theft, and exhibited to him money, consisting of United States currency and silver, over the amount of ten dollars. The denomination of the currency bills is not stated. How this man Flood should remember that the amount of money exceeded ten dollars, and yet could not give the denomination of the bill, or bills, is somewhat suspicious. But this is of no importance, because of another potent fact, which is that defendant, if indeed he did exhibit this money to Flood, knew it, and when arrested for the theft, and especially upon the trial when this fact was rendered so very important, would have remembered it. And though he may not have known the name of Flood, certainly as Flood was doing business within two or three hundred yards of the court house, the slightest diligence, even after announcement, would have resulted in securing this evidence.

These observations apply with equal, if not greater, force to the newly discovered evidence of Lipshits. If Florence was drunk, defendant knew it. He also knew that Lipshits was present at the very time of the taking, and must have known, if it was true, that Florence was drunk. Lipshits's place of business was in Tyler, at which place the trial was had; and in addition to all this, he was in attendance upon court as a witness for the State. If defendant desired to contradict Florence, and prove that in fact he was drunk, ordinary diligence would have prompted him to place him upon the stand and prove the fact.

We have very carefully examined all of the points raised by the very able brief and argument of counsel representing appellant. We have not discussed them all, but have only noted those points or assignments which, in our opinion, are most plausible; and, after a very thorough examination of the record, we have found no error therein, and the judgment is affirmed.

*Affirmed.*